IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JESSICA LAMARA GREEN ) | |
| ) | |
| v. ) | No. 1:14-0155 |
| ) | Judge Trauger/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To: The Honorable Aleta A. Trauger, District Judge

REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for Supplemental Security Income (SSI) benefits, as provided under Title XVI of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 14), to which defendant has responded (Docket Entry No. 15). Plaintiff has further filed a reply in support of her motion. (Docket Entry No. 16) Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

I. Introduction

Plaintiff filed her application for SSI benefits on September 28, 2011, alleging

---
[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

disability beginning June 1, 2010, due to a bulging disc and problems with her lower back and right hip. (Tr. 121) Her application was denied at the initial and reconsideration stages of agency review, whereupon she requested *de novo* review of her claim by an Administrative Law Judge (ALJ). The ALJ hearing was held on April 17, 2013, and plaintiff appeared with counsel and gave testimony. (Tr. 26-41) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until July 3, 2013, when she issued a written decision in which she concluded that plaintiff was not disabled. (Tr. 12-19) That decision contains the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since September 28, 2011, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: morbid obesity and degenerative disc disease of the lumbar spine with radiculopathy (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can stand and/or walk four hours and sit six hours in an eight-hour workday, but must be able to alternate positions every thirty minutes. She can frequently balance, stoop, kneel, and crouch. She can occasionally climb stairs and ramps. She can never climb ladders, ropes, or scaffolds. She can never crawl. She can have no exposure to workplace hazards, and she must avoid concentrated exposure to extreme cold and vibration.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on February 8, 1981 and was 30 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 28, 2011, the date the application was filed (20 CFR 416.920(g)).

(Tr. 14, 17-19)

On September 25, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following record review is taken from the ALJ's decision (Tr. 15-17):

The claimant began complaining of back pain to her primary care providers in June 2011, which is one year after her alleged onset date. (Ex. 1F, 4F). She was prescribed Flexeril and Naproxen for

3

thoracic back strain. In July 2011, she complained of back pain again and was advised to take over-the-counter Advil or Tylenol, watch her diet, and exercise. In November, the provider noted that she had full range of motion in her lumbosacral spine and hips. She could perform straight leg raises to 90 degrees. The person, whose signature is illegible, noted that she "rises by jumping up (symbol for "without") problems" presumably onto the examination table or out of a chair. Her gait was stable. Nevertheless, the provider referred the claimant to orthopedist Jeffrey P. Lawrence, M.D.

The claimant was treated by Dr. Lawrence between July and October 2011 for low back pain she reported radiating into the lower extremities. (Ex. 2F, 3F). An MRI performed on July 21, 2011, showed diffuse disc bulge with annular tear and small focal protrusion at L4-5 and mild canal stenosis. Dr. Lawrence prescribed muscle relaxers and narcotic pain medication. The claimant requested refills of Lortab early on several occasions, which Dr. Lawrence declined to prescribe. He ordered epidural steroid injections and physical therapy, which appear to have had minimal benefit. He noted that the claimant is 4' 11" tall and weighs 154 pounds. He recommended weight loss, and referred her for an evaluation by Dr. Li, a neurosurgeon.

The claimant reported to the emergency department of Maury Regional Hospital for exacerbations of low back pain radiating into the right lower extremity in October and November 2011. (Ex. 14F). On November 23, 2011, she was evaluated by Khan W. Li, M.D., and the examination was normal. (Ex. 5F, 6F, 7F). Dr. Li ordered a discogram which showed positive findings at L4-5 and L5-S1, which he stated was inconsistent with her MRI results. He said that she was not a candidate for surgery and recommended lifestyle modifications including diet, exercise, and alteration of her daily activities. He referred her for pain management.

The claimant was consultatively examined on January 17, 2012, by Darrel R. Rinehart, M.D., who stated that she got up and down from the table without difficulty. (Ex. 10F). Range of motion in her right hip and lumbosacral spine was normal. She had normal gait and station, and she walked with a brisk walk. She was able to bend over and touch her toes without difficulty. Dr. Rinehart noted that she is 59 inches tall and weighed 159.8 pounds on that date.

On January 13, 2012, State agency medical consultant James M. Lewis, M.D., stated that the claimant can lift and carry twenty pounds occasionally and ten pounds frequently. (Ex. 9F). She can stand and/or walk four hours and sit about six hours in an eight-hour workday. She can occasionally climb stairs and ramps, but she can never climb ladders, ropes, or scaffolds. She can frequently balance, stoop, and kneel. She can occasionally crouch but never crawl. She should avoid concentrated exposure to extreme cold and vibration. She should avoid all exposure to workplace hazards such as machinery and heights. Dr. Lewis' opinion was affirmed on April 24, 2012, by State agency medical consultant Michael Ryan, M.D. (Ex. 12F). ...

On March 6, 2012, the claimant was evaluated at The Pain Management Group by nurse practitioner Janis A. Fuqua, N.P. (Ex. 11F). She was prescribed Mobic and Tizanidine for lumbar spondylosis, lumbago, and lumbar radiculopathy. Ms. Fuqua refused to prescribe a narcotic pain reliever because the claimant's urine drug screen was positive for THC. She

4

received epidural steroid injections approximately bi-monthly throughout 2012, which appear to have been at least somewhat helpful. (Ex. 16F). The last office visit note dated January 31, 2013, states that the claimant reported she had stopped smoking marijuana, because after many failed drug tests she understood that was the only way she was going to be prescribed narcotic pain medication. (Ex. 17F). She testified, however, that she had last used marijuana one month prior to the hearing.

The claimant reported to the emergency department of Maury Regional Hospital for an exacerbation of low back pain radiating into the right lower extremity in June 2012. (Ex. 14F). In August 2012, she returned to see Dr. Li complaining of continued low back pain radiating into her lower extremities, as well as fecal incontinence. (Ex. 15F). Dr. Li stated that he felt her fecal smearing was not related to her back and ordered a new MRI. She returned on September 14, 2012, and he told her that her new MRI was actually improved from the one performed in July 2011. Dr. Li told her again that she is not a candidate for surgery. On September 26, 2012, she saw neurosurgeon William R. Schooley, M.D., for a second opinion. The examination was normal, and Dr. Schooley referred her to physical therapy stating that she is not a candidate for surgery. It does not appear that the claimant attended physical therapy as instructed.

The claimant established primary care with nurse practitioner Casi Miller, N.P., at Prohealth Rural Health Services on October 19, 2012, complaining of constipation. (Ex. 19F). She was prescribed medication for the condition, and diagnosed with morbid obesity. Her height was recorded as 59 inches and her weight as 163 pounds. Ms. Miller advised lifestyle changes and weight loss. Her constipation was improved later in the month, and she did not return to the clinic until February 2013 when she requested that Ms. Miller complete paperwork for disability. Ms. Miller referred her to physical therapy, but it does not appear that the claimant complied with weight loss or physical therapy recommendations.

On February 7, 2013, Ms. Miller completed a form that said the claimant could lift and carry ten pounds frequently. (Ex. 18F). She stated on an office visit note that same date that she had "completed pt's paperwork to the best of my ability due to no quantitative lifting measurements". She went on to say that the claimant can stand and walk about two hours and sit about six hours in an eight-hour workday alternating positions every hour at will. She said that the claimant would need to lie down three to four times per day. The claimant could never twist and could occasionally stoop, bend, crouch, climbs stairs, and climb ramps. She should avoid concentrated exposure to extreme cold and would be expected to miss about one day per month. ...
She opined that the claimant has these limitations due to bulging discs in the cervical and lumbar spine. The record contains no evidence of problems with the claimant's cervical spine. Ms. Miller's own exam notes the date of her assessment indicate that the claimant was in no acute distress, her back had normal curvature and no tenderness, but the claimant reported mild tenderness in the lumbar spine with hip flexion. Her extremities had full range of motion, with no deformities, no edema and no erythema. Her muscle strength was 4+/5+, but Ms. Miller noted the claimant reported a history of bulging discs in her back. Ms. Miller also noted that the claimant reported it was difficult to carry a [jug] of mil[k] or laundry detergent sometimes. ...

5

With regard to the claimant's activities of daily living, she can manage her personal care, prepare meals, and perform household chores. (Ex. 4E, 9E). She takes care of her two elementary school-age children who help with chores at home. Notes from her primary care physician refer to her occupation as homemaker, [and] she stopped working approximately one year prior to seeking treatment for back pain. Her boyfriend handles the family finances and shopping, although there is no evidence that she is unable to do so. She is able to drive and use public transportation.

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the record contains substantial evidence that could have supported an opposite conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

#### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by

relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff argues that the ALJ erred in failing to give proper weight to the assessment of Casi Miller, N.P., concerning plaintiff's work-related physical limitations; in inappropriately deferring to the opinions of the nonexamining consultants over the opinion of Ms. Miller; in refusing to order a post-hearing consultative examination; in failing to

8

properly consider the effects of plaintiff's obesity; and, in failing to include a function-by-function assessment in determining plaintiff's physical RFC. For the reasons that follow, the undersigned finds no merit in these contentions.

Plaintiff's primary argument (and the only argument that she re-asserts in her reply brief) is that the ALJ erred in her weighing of Ms. Miller's assessment as compared with the requirements of Social Security Ruling (SSR) 06-03p, and as compared with the assessments of the nonexamining consultants, Drs. Lewis and Ryan. Reciting much of the text of Social Security Ruling 06-03p, plaintiff contends that Ms. Miller, despite being an "other source" who is not an "acceptable medical source" under the regulations, see 20 C.F.R. § 416.913(a), (d), has nonetheless rendered a "treating opinion" which the ALJ was required to consider, and give good reasons for rejecting. However, this argument misses the mark, as an opinion from an "other source" such as a nurse practitioner is not entitled to the same deference and procedural protections as a treating physician's medical opinion (recognized by the regulatory entitlement to "controlling weight" in proper cases and the giving of "good reasons" for the weight ultimately assigned such an opinion, 20 C.F.R. § 416.927(c)(2)), even if the circumstances of a particular case might lead an ALJ to give greatest weight to such "other source" opinion. See Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 378 (6th Cir. 2013).[2] Rather, as SSR 06-03p states,

---

[2]Quoting SSR 06-03p, the court in Gayheart stated that "[t]he factors set forth in 20 C.F.R. § 404.1527 [(identical to § 416.927)], which under the regulation apply only to medical opinions from acceptable medical sources, nevertheless 'represent basic principles that apply to the consideration of all opinions from medical sources ... who have seen the individual in their professional capacity.'" 710 F.3d at 378. The court found that those principles had been properly applied to the opinion of a therapist and sufficiently supported the relatively little weight given to the therapist's opinion, "particularly given the secondary importance of that opinion relative to [the treating psychiatrist's]

9

> [a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

2006 WL 2329939, at *7.

Here, the ALJ explained her consideration of Ms. Miller's assessment as follows:

On February 7, 2013, Ms. Miller completed a form that said the claimant could lift and carry ten pounds frequently. She stated on an office visit note that same date that she had "completed pt's paperwork to the best of my ability due to no quantitative lifting measurements". ... Ms. Miller is not an acceptable medical source, but her opinion has been evaluated in light of SSR 06-03p. She opined that the claimant has these limitations due to bulging discs in the cervical and lumbar spine. The record contains no evidence of problems with the claimant's cervical spine. Ms. Miller's own exam notes the date of her assessment indicate that the claimant was in no acute distress, her back had normal curvature and no tenderness, but the claimant reported mild tenderness in the lumbar spine with hip flexion. Her extremities had full range of motion, with no deformities, no edema and no erythema. Her muscle strength was 4+/5+, but Ms. Miller noted the claimant reported a history of bulging discs in her back. Ms. Miller also noted that the claimant reported it was difficult to carry a [jug] of mil[k] or laundry detergent sometimes. Apparently, Ms. Miller based at least some of her opinion on the claimant's reports. Further, Ms. Miller only saw the claimant on two occasions prior to this statement, there was no indication of any abnormalities related to her back or neck in the exams on either of these two prior appointments, and Ms. Miller treated her only for constipation. The limitations described in Ms. Miller's statement are not supported by the medical evidence, and her opinion is given little weight.

---

opinions." Id.

(Tr. 17) Of note, plaintiff and her attorney conceded at the hearing before the ALJ that Ms. Miller has not been involved at all in the treatment of plaintiff's back impairment (Tr. 29-30), confirming that her assessment of such significant lifting and postural limitations was not based on her extremely limited treatment of plaintiff.  So, as recounted above by the ALJ, Ms. Miller's assessment is based on a couple of visits, and is founded much more firmly on plaintiff's report of her conditions and limitations than on the results of Ms. Miller's physical examination or any clinical testing.  It could not be more clear to the undersigned that the ALJ properly considered Ms. Miller's assessment as directed by SSR 06-03p, and gave it all the weight it was due.  Moreover, the ALJ did not err in giving more credence to the assessments of Drs. Lewis and Ryan, who as nonexamining physicians are the virtual equivalent to Ms. Miller in terms of their acquaintance with her back problems, but who are furthermore "acceptable medical sources" who are experts at evaluating disability claims under the regulations.  See Potts v. Astrue, 2009 WL 2168731, at *5-6 (M.D. Tenn. July 17, 2009) (quoting 20 C.F.R. § 404.1527(f)(2) and SSR 96-6p). Notwithstanding plaintiff's argument to the contrary, Gayheart does not compel the contrary result.  Rather, Gayheart condemns the glossing over of defects in consulting physicians' opinions only to apply "greater scrutiny to a treating-source opinion as a means to justify giving such an opinion little weight." 710 F.3d 379-80.  In the case at bar, the scrutiny applied to Ms. Miller's assessment was fully warranted, and indeed was called for by SSR 06-03p.

   Plaintiff next argues that the ALJ erred by failing to fully and fairly develop the record when she declined counsel's request for a post-hearing consultative examination at government expense.  The following colloquy took place at the hearing, when counsel

questioned the sufficiency of the initial consultative examination:

ALJ: Well, there was a consultative exam. He did not give an opinion, but he -- if you read what his exam findings were: Range of motion of her hip was normal. She got up and down from the exam table without difficulty. She walked with normal station and gait, had a nice, brisk walk, able to bend over and touch her toes without difficulty. And the lumbosacral range of motion in all directions was completely normal. And some of the treatment exams were fairly normal too.

ATTY: And it looks like she didn't start -- the only reason I was asking for the CE was it looks like she didn't start going to the pain management -- she started getting the injections and the [inaudible] after the fact, after the CE and all that was done, so --

ALJ: Yes, but the consultative exam was in January of 2012 and although it's true that she has gone to pain management since then, you know, I note that her pain wasn't so great that she gave up marijuana in order to get narcotic pain medication. She chose to keep smoking marijuana, and they kept telling her, we're not going to give you any narcotics as long as you're smoking marijuana. And that tells me that her pain wasn't so bad that she wanted narcotic pain medication, and they've given her some medication and she is being treated by a pain management group because the surgeons have determined that she didn't need surgery.

The original radiograph only showed a small problem, the radiology report in November 2011 indicated a mild amount of -- mild displacement of the left S1 nerve root [inaudible]. The posterior lateral annular tear to the far left foramen, so, you know, she does have some problems, but it does not look like anyone thinks it requires surgery at this time. And she did have a fairly benign examination in January 2012, and when I looked at the treatment notes, I didn't see where they were finding -- where any other exam had any greater findings. I think sometimes she even had negative straight-leg raises in the exams from her treating sources.

So I'm not inclined to get another consultative exam. I don't see evidence that she has changed -- that her condition has changed that much.

ATTY: Yes, your Honor.

(Tr. 35-37) "An ALJ has discretion to determine whether further evidence, such as additional testing of expert testimony, is necessary." Foster v. Halter, 279 F.3d 348, 355 (6th

Cir. 2001) (citing 20 C.F.R. § 416.917). The undersigned finds the ALJ's rationale for declining to purchase another consultative examination to be a reasonable exercise of her discretion, and not erroneous.

Plaintiff next argues that the ALJ erred in failing to appropriately consider the effects of plaintiff's obesity when determining her RFC. However, plaintiff fails to identify any particular effect which was not considered, or point to any evidence which demonstrates the prejudice resulting from such a failure of consideration. Defendant points the court to Coldiron v. Comm'r of Soc. Sec., 391 Fed. Appx. 435, 443 (6th Cir. Aug. 12, 2010), wherein it was noted that it is "'a mischaracterization to suggest that Social Security Ruling 02–1p offers any particular procedural mode of analysis for obese disability claimants.' Instead, SSR 02-1p provides that 'obesity, in combination with other impairments, 'may' increase the severity of the other limitations.'" Quoting Bledsoe v. Barnhart, 165 Fed. Appx. 408, 412 (6th Cir. 2006) and SSR 02-1p. The ALJ here found that morbid obesity was a severe impairment (Tr. 14), and her decision does not give any indication that she discounted the impact of that impairment when considering plaintiff's RFC. The undersigned finds no error here.

Finally, plaintiff argues that the ALJ erred in failing to include an explicit function-by-function assessment in her determination of plaintiff's RFC. The Sixth Circuit has addressed this matter as follows:

> In *Bencivengo [v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)]*,* the Third Circuit stated, "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Bencivengo,* slip op. at 4. The Third Circuit distinguished between what an ALJ must consider and what an ALJ

must discuss in a written opinion. The ALJ need not decide or discuss uncontested issues, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Bencivengo,* slip op. at 5.

Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547-48 (6th Cir. Mar. 4, 2002). Here, the ALJ addressed plaintiff's exertional and nonexertional capabilities, making reference to the evidence that supports her conclusions. Yet again, plaintiff has failed to identify any evidence supporting an impairment of physical function which was not considered. The undersigned finds that the ALJ's RFC determination evidenced her entirely adequate consideration of plaintiff's functional abilities, and complied with SSR 96-8p. See, e.g., Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 729 (6th Cir. Sept. 5, 2013).

In sum, the undersigned concludes that the decision of the ALJ is supported by substantial evidence on the record as a whole, and should therefore be affirmed.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections

14

within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

    **ENTERED** this 4th day of March, 2016.

                                                            s/ John S. Bryant
                                                            JOHN S. BRYANT
                                                            UNITED STATES MAGISTRATE JUDGE